UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| DOUGLAS HENTON, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. |
| | : | |
| v. | : | |
| | : | 3:06 CV 2035 (EBB) |
| CITY OF NEW LONDON, | : | |
| | : | |
| Defendant | : | |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

The Plaintiff, Douglas Henton ("Plaintiff" or "Henton") brings this action against the City of New London ("City" or "Defendant"), alleging race discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e), *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1) and (a)(4). Plaintiff also brings common law claims for negligent and intentional infliction of emotional distress.

Currently pending before the Court are Defendant's (1) motion for summary judgment [Doc. No. 23] and (2) motion to strike [Doc. No. 34] (a) portions of Plaintiff's Local Rule 56(a)(2) statement and (b)evidence submitted by Plaintiff in support of his opposition to Defendant's motion for summary judgment. For the following reasons, Defendant's motion to strike is GRANTED IN PART and DENIED IN PART, and Defendant's motion for summary judgment is GRANTED IN

PART and DENIED IN PART.

## I. Motion to Strike

### A. Standard of Review

Fed. R. Civ. P. 56(e)(2) provides that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  A motion to strike is the proper vehicle for a movant to challenge evidence submitted in opposition to a motion for summary judgment. Newport Electric, Inc. v. Newport Corp., 157 F. Supp. 2d 202, 208 (D. Conn. 2001).  "The moving party must be specific in regards to what it is seeking to have stricken and must set forth reasons for why the materials should not be considered by the court." Id.  "In ruling on a motion to strike, the court applies the Federal Rules of Evidence to determine whether evidence would be admissible at trial and thus whether a court can consider them in a ruling on a motion for summary judgment." Raskin v. Wayatt Co., 125 F.3d 55, 66 (2d Cir. 1997).  "Although disputes as to the validity of the underlying data go to the weight of the evidence, and are for the fact-finder to resolve, questions of admissibility are properly resolved by the court." Id. (internal citations omitted).

**B. Discussion**

Defendant challenges the admissibility of Plaintiff's exhibits D, E and K, as well as certain statements in Plaintiff's affidavit. Defendant also challenges many of Plaintiff's responses to Defendant's Local Rule 56(a)(1) statement of undisputed facts, and contends that the Court should strike the Plaintiff's Local Rule 56(a)(2) Statement in its entirety because of Plaintiff's failure to include a "disputed issues of material fact" section.

**1. Exhibits D, E, and K**

Plaintiff's exhibits D, E and K are unsworn letters from Plaintiff's co-workers. In general, unsworn letters are not appropriately considered on a motion for summary judgment. <u>See</u> <u>United States v. All Right, Title & Interest in Real Prop. & Appurtenances</u>, 77 F.3d 648, 657-58 (2d Cir. 1996) ("[T]he submission of [an] unsworn letter was an inappropriate response to the ... motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court"); <u>Dukes v. City of New York</u>, 879 F.Supp. 335, 343 (S.D.N.Y. 1995) (stating that "unsworn statements are not admissible to controvert a summary judgment motion"). However, a court may consider an unsworn statement where the opposing party has not challenged it. <u>See</u> 10A Charles Alan Wright et al., Federal Practice & Procedure § 2722, at 384-85 (3d ed. 1998) ("uncertified or otherwise inadmissible documents may be considered by the court if not challenged");

<u>Capobianco v. City of New York</u>, 422 F.3d 47, 55 (2d Cir. 2005) (unsworn letter used by the plaintiff should have been considered by the district court where that letter had been submitted by the *defendant* in support of the motion, indicating that there had been no challenge to the admissibility of that evidence).   Here, Defendant has properly challenged the admissibility of these unsworn statements.  Thus, Defendant's motion to strike Plaintiff's exhibits D, E and K is GRANTED.

### 2. Plaintiff's Affidavit

Rule 56(e)(1) provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated."   "A court may therefore strike portions of affidavits which are not made upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."   <u>Hollander v. American Cyanamid Co.</u>, 999 F. Supp. 252, 255-56 (D. Conn. 1998) (citing cases). Here, Defendant moves to strike ¶¶ 8, 9, 10, 16 and 17 of Plaintiff's affidavit (Pl. Ex. F).   The Court addresses each paragraph in turn.

*Paragraph 8*.   Paragraph 8 states that Plaintiff "ha[s] observed and been the victim of unfair treatment by non-African American supervisors and managers while employed in the solid waste department."  Henton Aff. at ¶ 8 (Pl. Ex. F). Defendant argues that

4

this statement is conclusory and calls for a legal conclusion (arguing that whether or not the treatment was "unfair" is a matter of law). Def's. Mem. in Supp. of Mot. to Strike at 4 [Doc. No. 35]. A conclusory statement is one which "express[es] a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary (8th ed. 2004). Plaintiff argues that this paragraph merely "set[s] up the material facts laid out in ensuing paragraphs of the affidavit alleging discrimination." Pl's. Mem. in Opp'n to Def's. Mot. to Strike at 15 [Doc. No. 42]. While this may be the case, Defendant is correct that the paragraph itself is conclusory. Thus, Defendant's motion to strike ¶ 8 is GRANTED. See, e.g. Hollander, 172 F.3d at 198 (portions of affidavit submitted in opposition to motion for summary judgment that were merely summaries of evidence properly included elsewhere did not preclude finding that they should be stricken), cert. denied, 528 U.S. 965 (1999), abrogated on other grounds, Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000).

*Paragraph 9.* In this paragraph, Plaintiff states: "I have seen the management officials require only the black employees and other minorities to ride the back of the garbage truck that I drove and the other refuse trucks within the department. There is a recycling truck that is used as well and it is generally easier and cleaner work. Management would only allow Caucasian employees to

work that truck.  Further, only minority employees were required to do the loading of the refuse trucks as well.  The town also reduced the number of trucks and this increased the burden of lifting and handling tons of garbage by hand on a daily basis." Henton Aff. at ¶ 9 (Pl. Ex. F).  Defendant argues that this paragraph should be stricken as irrelevant[1], as "the instant case is about the discrimination, harassment, and/or retaliation that plaintiff allegedly suffered, not the discrimination, harassment and/or retaliation that plaintiff's co-workers allegedly suffered." Def's. Mem. in Supp. of Mot. to Strike at 5 [Doc. No. 35]. Plaintiff contends, and this Court agrees, that this statement is relevant to the extent that it could tend to show a hostile work environment.  See, e.g. Perry v. Ethan Allen, Inc., 115 F.3d 143, 150 (2d Cir. 1997) (noting that "[s]ince one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself, evidence of the general work atmosphere is relevant); Abdus-Sabar v. Port Authority of New York and New Jersey, No. 00 CIV. 5496, 2001 WL 1111984, at *2(S.D.N.Y. Sept. 20, 2001) (stating that "[s]everal courts have held that in an action under Title VII of the Civil Rights Act, evidence of discrimination against others is relevant to establishing a generally hostile work environment").  Thus, Defendant's motion to strike ¶ 9 is DENIED.

---

[1]The Federal Rules define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  F.R.E. 401.

*Paragraphs 10 and 16.* Defendant argues that portions of ¶¶ 10 and 16 contradict Plaintiff's previous deposition testimony and interrogatory responses, and should be stricken as a result. Def's. Mem. in Supp. of Mot. to Strike at 5 [Doc. No. 35]. "A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. N.Y.C. Dept. Of Corr., 84 F.3d 614, 619 (2d Cir. 1996); see also Martin v. City of New York, 627 F. Supp. 892, 896 (E.D.N.Y. 1985) (striking an affidavit submitted in opposition to defendant's summary judgment motion where that affidavit directly contradicted previous deposition testimony). However, "a material issue of fact may be revealed by ... subsequent sworn testimony that amplifies or explains, but does not merely contradict ... prior testimony ... especially where the party was not previously asked sufficiently precise questions to elicit the amplification or explanation." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

Paragraph 10 of Plaintiff's affidavit states: "[t]here is also a pit in the recycling area which often must be cleared of garbage to permit the blade utilized there to function. My supervisor, Mounir Hage, would only require minority and black employees to clean that area. Mr. Hage had me perform that work as well." Henton Aff. at ¶ 10 (Pl. Ex. F). Defendant argues that this

paragraph contradicts Plaintiff's deposition testimony regarding the pit area:

> Q: . . . As far as the pit, how many times did you have to get in there and clean the pit?
>
> A: I ain't even clean it that day.
>
> Q: Okay.
>
> A: Never.
>
> Q: So you're [sic] never done that?
>
> A: Only because I spoke up because they knew I was right.
>
> Q: And so the answer to my question is you've never gone into the pit?
>
> A: No.
>
> Q: Okay.
>
> A: Well, yes, I did that day, I actually did. But anytime after than, no, I didn't, because I hurted [sic] my back and that was my excuse because I had a doctor's note, no bending, no shoveling, no twisting so they couldn't send me down there. 10/17/06 Henton Dep. at 113-114 (Def. Ex. 1[2])

According to the Defendant, Plaintiff's deposition testimony states that while he was required to go into the pit on one occasion, he was never required to clean it. Def's. Mem. in Supp.

---

[2]Defendant uses numerals to refer to the exhibits attached to its motion to strike, and letters to refer to the exhibits attached to its motion for summary judgment. The Court will do the same.

of Mot. to Strike at 6. [Doc. No. 35].   However, the testimony is not clear on this point.  While Plaintiff testified that he did not clean the pit on the day in question ("I ain't even clean it that day"), and that he never went into the pit *after* that day, it is not clear whether he cleaned the pit on prior occasions. Thus, the Court DENIES Defendant's motion to strike ¶ 10 of Plaintiff's affidavit.

*Paragraph 16*.  In this paragraph, Plaintiff states that "the trailer where the solid waste employees report to is known as the 'monkey house'".  Henton Aff. at ¶ 16 (Pl. Ex. F).  Defendant moves to strike this paragraph because this allegation was not raised in Plaintiff's complaint, deposition testimony, or answers to interrogatories, but rather raised for the first time in Plaintiff's affidavit.   Def's. Mem. in Supp. of Mot. to Strike at 7 [Doc. No. 35].

While Plaintiff failed to include the "monkey house" allegation in his response to Defendant's request for a list of each instance of racial discrimination, harassment and retaliation, this addition does not contradict earlier claims made in Plaintiff's deposition or in his responses to Defendant's interrogatories.  Thus, the Court DENIES Defendant's request to strike ¶ 16 of Plaintiff's affidavit.  <u>See</u>, <u>e.g.</u>, <u>Dragon v. I.C. System, Inc.</u>, 241 F.R.D. 424, 426 (D. Conn. 2007) (stating that "although a party does not show a triable issue of fact merely by

submitting an affidavit that disputes his own prior sworn
testimony, . . . a material issue of fact may be revealed by his
subsequent sworn testimony that amplifies or explains, but does not
merely contradict, his prior testimony.") (internal citations and
quotation marks omitted).

*Paragraph 17*.  Defendant moves to strike a portion of this
paragraph, in which Plaintiff states that "[e]ven though I was out
of work for a brief period during the posting time, I would have
been made aware of the opening through other members of the
department in my union."  Henton Aff. at ¶ 17 (Pl. Ex. F).
Defendant argues that this statement is purely speculative.  While
Plaintiff does not explicitly state the basis for this statement,
it is reasonable to infer, and his memorandum of law makes clear,
that he is relying on his personal knowledge of the practices of
his union.  Thus, Defendant's motion to strike this portion of ¶ 17
is DENIED.

### 3. Local Rule 56 Statements

Defendant argues that Plaintiff's Local Rule 56(a)(2)
statement is deficient because it: (1) fails to offer a statement
of disputed facts[3]; (2)fails to either admit or deny ¶¶ 41, 50, 52

___

[3]Defendant argues that the Court should strike Plaintiff's statement in
its entirety, and deem the facts in Defendant's statement as admitted, for
failure to include a "disputed issues of material fact" section.  Although
"failure to comply with the court's rules concerning the appropriate way to
oppose the defendants' motion for summary judgment is sufficient reason alone
to accept the defendants' list of material facts as undisputed," Longshore-
Pizer v. Connecticut, 451 F. Supp. 401, 406 n.3 (D. Conn. 2006) (internal
citations omitted), such action is not required.  In this case, the Court will

and 61; (3) denies ¶¶ 38, 40, 48 and 54 without offering specific citations; (4) relies on Plaintiff's own complaint as evidence in denying ¶¶ 13, 14, 17, 19 and 33; (5) denies ¶¶ 9, 10, 22, 37, 43, 44, 47 and 53 with citations that do not support the response; (6) denies ¶¶ 42 and 44 by citing to inadmissible evidence; and (7) inappropriately attempts to argue Plaintiff's case in ¶¶ 27, 28, 55 and 56. Def's. Mem. in Supp. of Mot. to Strike at 10 [Doc. No. 35].

*Paragraphs 41, 50, 52, 61.* In response to ¶¶ 41, 50, 52 and 61 of Defendant's Local Rule 56(a)(1) statement, Plaintiff simply states that he is "unable to admit or deny" the facts as being undisputed. As Defendant properly notes, the language of the Local Rule does not permit such a response, as the rule specifies that the proposed undisputed facts must be "admitted or denied", and requires further that each denial be accompanied by a specific citation to an affidavit or other evidence that would be admissible at trial. <u>See</u> Local Rule 56(a)(2)-(3). Accordingly, these four paragraphs are accepted as undisputed. <u>See</u>, <u>e.g.</u> <u>Knight v. Hartford Police Dep't</u>, No. 3:04CV969, 2006 WL 1438649, at *4 (D. Conn. May 22, 2006) (accepting the defendant's undisputed facts where the plaintiff's responses stated that he "ha[d] no knowledge" or "disagreed" with defendant's statements and where the plaintiff

---

accept the defendant's material statements as true, except where Plaintiff has denied them with a proper basis for such a denial. <u>See</u>, <u>id.</u> (holding same).

offered no evidence to dispute their accuracy); <u>Walton v. Connecticut</u>, No.3:03CV2262, 2006 WL 533793, at *2 n. 3 (D. Conn. March 2, 2006) (deeming admitted material facts set forth by the defendant where the plaintiff merely claimed insufficient knowledge to respond and offered no evidence to dispute the facts).

*Paragraphs 38, 40, 48, 54.* Plaintiff denies the facts asserted by Defendant in ¶¶ 38, 40, 48, and 54, but fails to cite an affidavit or any other evidence in support of these denials, as required by Local Rule(a)(3). Accordingly, these four paragraphs are accepted as undisputed. <u>See</u> Local Rule 56(a)(1) ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)(2).").

*Paragraphs 13, 14, 17, 19, 33.* Plaintiff denies the facts asserted in these paragraphs, citing solely to his complaint. Defendant correctly argues that "allegations in a complaint are not evidence." <u>Welch-Rubin v. Sandals Corp.</u>, No. 3:03CV481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004). The Court notes that the general claim Plaintiff makes in denying these paragraphs – that his supervisor told him to call in sick on July 5, 2005, is consistent with his deposition testimony, which is admissible evidence that Plaintiff failed to cite. Nonetheless, even if Plaintiff had cited his deposition testimony, it would not have supported his denials of Defendant's statements in these

paragraphs. For example, in ¶ 19, Defendant states that "[u]nder the collective bargaining agreement, the plaintiff's failure to report to work or call in is considered to be a 'no report' and is punishable by a written reprimand according to Appendix C, Section 4 – Corrective Actions." Clearly, whether or not Plaintiff's supervisor told him to call in sick that day does not support his denial of this paragraph. A "district court . . . must be satisfied that the citation to evidence in the record supports the assertion." <u>SEC v. Global Telecom Services, L.L.C.</u>, 325 F. Supp.2d 94, 109 n.2 (D. Conn. 2004), <u>citing</u> <u>Vermont Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 243 (2d Cir. 2004). Here, even if Plaintiff had cited to admissible deposition testimony, this evidence would not support his denials. Thus, ¶¶ 13, 14, 17, 19 and 33 are accepted as undisputed.[4]

*Paragraphs 9, 10, 22, 37, 43, 44, 47, 53.* Defendant argues that Plaintiff's responses to the above paragraphs do not cite evidence that support his denials. After carefully reviewing each paragraph and evidence cited by Plaintiff in support of its denials, the Court agrees in part. Plaintiff's responses to ¶¶ 10, 37, and 43 do not cite evidence that support his denials. However, Plaintiff's responses to the remainder of the paragraphs at issue do. In addition, the Court notes that Plaintiff's denial of ¶ 44

---

[4]In fact, the Court notes that Plaintiff admitted ¶ 13 (which states that Plaintiff requested a vacation day for July 5, 2005), but added his supervisor told him to call in sick.

is supported by admissible evidence.

In ¶9, Defendant asserts that Plaintiff is consistently tardy and sometimes absent. However, in the deposition testimony Plaintiff cites, he states that he "never takes time off" and "has a lot of overtime." 10/2/07 Henton Dep. at 91 (Pl. Ex. B). The testimony does not "only speak to whether [Plaintiff] had permission to take the day off", as Defendant suggests. In ¶22, Plaintiff cites his cell phone record in denying Defendant's assertion that "Plaintiff has no evidence to support his claim that he did call into work on July 5, 2005 but that no one was available to speak with him". In ¶44, Defendant states that the vacancy posting specified that an applicant was required to have a Class A license with endorsements for both tanker and airbrakes. Plaintiff denies that there was an airbrake endorsement. Although Plaintiff did not cite Defendant's Exhibit I (the vacancy posting), the Court notes that the posting explicitly requires " [a] commercial drivers license with tanker Endorsement", but makes no mention of an airbrake endorsement. In ¶ 47, Defendant states that Plaintiff was not qualified for the new position because he did not have the required air brake endorsement on his driver's license. Plaintiff's denial cites his deposition testimony, which essentially states that the airbrake qualification is subsumed within the commercial driver's license, which Plaintiff possesses. 10/2/07 Henton Dep. at 14-15 (Pl. Ex. B). Finally, in ¶ 53,

Defendant states that Mounir Hage was at the top of the sequence of preference for applicants for the new position. Plaintiff denies this by citing his deposition testimony, where he stated that people from his union had the first bid on that position, and that Hage did not belong to his union. Id. at 106-07. All of these responses cite to evidence that support Plaintiff's denials. Thus, only ¶¶ 10, 37, and 43 are accepted as undisputed.

*Paragraph 42.* In ¶ 42, Defendant states that the vacancy for the new position was posted on November 4, 2005. Plaintiff "denies that the job vacancy was posted as required by union collective bargaining agreement," citing deposition testimony where he stated that he knew the job was not posted because he had been told so by co-workers. See 10/2/07 Henton Dep. at 106 (Pl. Ex. B). This testimony is inadmissible hearsay. Thus, ¶ 42 is accepted as undisputed.

In sum, in addition to the paragraphs in Defendant's Rule 56(a)(1) Statement that Plaintiff admitted, the following paragraphs are also accepted as undisputed: 10, 13, 14, 17, 19, 33, 37, 38, 40, 41, 42, 43, 48, 50, 52, and 61.

## II. Motion for Summary Judgment

### A. Standard of Review

The standard for summary judgment is well established. A moving party is entitled to summary judgment if it demonstrates

that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56©. An issue of fact is "material" if it "might affect the outcome of the suit under the governing law", while an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986); see also Konikoff v. Prudential Ins. Co. Of Am., 234 F.3d 92, 97 (2d Cir. 2000). Upon motion, and following adequate time for discovery, Rule 56© requires that summary judgment be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). This showing may be made by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." FED. R. CIV. P. 56©. The evidence of the non-moving party is to be believed, Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, and "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962). However, the non-movant may not rest upon the mere allegations or denials of his pleading, see FED. R. CIV. P. 56(e), and "must do more than simply show that there is some metaphysical

doubt as to the material facts." <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Instead, the non-moving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998).

Summary judgment may be appropriate in employment discrimination cases even though such cases often involve the employer's intent or state of mind. The "summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." <u>McCloskey v. Union Carbide Corp.</u>, 815 F.Supp. 78, 80 (D. Conn. 1993), <u>quoting</u> <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985), <u>cert. denied</u>, 474 U.S. 829, 106 S.Ct. 91 (1985.]. However, courts should be cautious in granting summary judgment in these cases, "because direct evidence of an employer's discriminatory intent will rarely be found." <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotations omitted). In acting with caution, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." <u>Id</u>. However, at the same time, a plaintiff may not defeat a motion for summary judgment by relying on "purely conclusory allegations of discrimination, absent any concrete particulars." <u>Meiri v. Dacon</u>, 759 F.2d at 998.

## B. Factual Background

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this motion for summary judgment. The following factual summary is based on Plaintiff's Complaint, Defendant's Local Rule 56(a)(1) Statement of Material Facts ["Def.'s 56(a)(1) Statement"], Plaintiff's Local Rule 56(a)(2) Statement of Material Facts ["Pl's. 56(a)(2) Statement"], and accompanying affidavits, depositions and exhibits, to the extent that they are admissible evidence. Consequently, such factual summary does not represent factual findings of the Court. All facts stated below are undisputed (or have been deemed undisputed) unless stated otherwise.

Plaintiff is a black male who was hired by Defendant in the Solid Waste Department as a refuse collector on February 9, 1998. Def.'s 56(a)(1) Statement ¶¶ 1-2; Pl.'s 56(a)(2) Statement ¶¶ 1-2 ("Admitted"). Plaintiff was later promoted to a refuse truck driver. Id. at ¶3. Plaintiff's official title is "Public Works Maintainer II", a unionized position which is subject to a collective bargaining agreement with Local 1378 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO. Id. at ¶¶ 4-5. At all times relevant to Plaintiff's case, Plaintiff's direct supervisor was Mounir Hage ("Hage"), and Hage's supervisor was Public Works Administrator Michael Gambro ("Gambro"). Id. at ¶¶ 6-7.

July 5, 2005, following the 4th of July holiday, was a "double pick up day" at Plaintiff's employment. "Double pick up days" occur after every holiday that falls on a weekday and interrupts garbage collection for that day. It is a rule that no employee is allowed to take a vacation day on a "double pick up day". Hage Aff. at ¶ 5 (Def. Ex. B). Plaintiff requested a vacation day from Hage for this day and was denied. Id.; 10/2/07 Henton Dep. at 91 (Pl. Ex. B). However, according to Plaintiff, Hage instructed him to call in sick. Id. Plaintiff did not report to work on July 5th. Plaintiff's cell phone bill confirms that he called the Solid Waste Department at approximately 9:20 AM on that day. Def. Ex. G. Although Plaintiff's shift that day began at 8:00 AM, he testified that he waited to call until 9:20 AM because employees at the plant usually did not answer the phone until later in the morning. 10/2/07 Henton Dep. at 63 (Pl. Ex. B).

Under the collective bargaining agreement, an employee's failure to report to work or call in is considered to be a "no report" according to Appendix C, Section 4 of the agreement. Def. Ex. C at 59. A "no report" can be punishable by a written reprimand. Id. at 61; Welch Aff. at ¶ 7 (Def. Ex. A). On July 7, 2005, Gambro issued an interdepartmental memo in which he requested that Plaintiff be issued a written reprimand for a "no report" on July 5th. Def. Ex. D.

On September 7, 2005, Plaintiff was approached by Hage for

being tardy. Def.'s 56(a)(1) Statement ¶¶ 28-29; Pl.'s 56(a)(2) Statement ¶¶ 28-29 ("Admitted"). In his deposition testimony, Plaintiff maintained that he was not tardy that day, Henton Dep. at 87 (Pl. Ex. B), but admitted in his Local Rule 56 statement that he was. Pl's. 56(a)(2) Statement ¶ 28. Ronald Clark, a Caucasian co-worker, was also tardy on that day. Id. at ¶ 31; Hage Aff. at ¶ 7 (Def. Ex. B). However, Clark was not approached by Hage for being tardy. See Hage Aff. at ¶ 7 (Def. Ex. B). Defendant claims that this was because Clark's tardiness was perceived to be an isolated incident, id., and that, as of that date, Clark did not have a history of tardiness or absenteeism. Welch Aff. at ¶ 15 (Def. Ex. A). Plaintiff maintains that Clark was habitually tardy. 10/2/07 Henton Dep. at 88 (Pl. Ex. B). Plaintiff complained of differential treatment to both Hage and Gambro, Hage's supervisor. Id. at 95.

The next day, September 8, 2005, a <u>Loudermill</u>[5] hearing was held to determine Plaintiff's punishment for his failure to report to work on July 5, 2005. Welch Aff. at ¶8 (Def. Ex. A). Plaintiff complained to Welch that he believed it was irregular for him to be brought up for discipline in September over a July incident. 10/2/07 Henton Dep. at 92-93 (Pl. Ex. B). Plaintiff also believed

---

[5] The term " Loudermill hearing" refers to the process a government entity must afford to a public employee prior to disciplining that employee. <u>See</u> <u>Cleveland Bd. of Ed. v. Loudermill</u>, 470 U.S. 532, 105 S.Ct. 1487 (1985). Such a hearing is held to determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." <u>Id.</u> at 546, 105 S.Ct. 1487.

that the hearing was a response to the complaint he made to Hage and Gambro the day before. Id. At this hearing, Plaintiff claimed that he did call into work, but that no one was available to speak to him. Defendant admits that Plaintiff made this claim. Welch Aff. at ¶ 8 (Def. Ex. A). However, Defendant states that because Plaintiff had no evidence to support this claim, he was issued a reprimand on September 23, 2005.[6] Id.

On September 14, 2005, Plaintiff received notice that he was being docked 3.5 hours of pay for unauthorized leave on September 1, 2005. Def.'s 56(a)(1) Statement ¶¶ 35-36; Pl.'s 56(a)(2) Statement ¶¶ 35-36 ("Admitted"). Upon receiving notice of this pay deduction, Plaintiff left his assigned work route without permission. Def.'s 56(a)(1) Statement ¶38[7]; Def. Ex. H. He went to City Hall to complain that his pay had been docked despite the fact that he had a doctor's note explaining his absence. Def.'s 56(a)1 Statement ¶ 39; Pl.'s 56(a)(2) Statement ¶ 39 ("Admitted"); Def. Ex. H. Plaintiff claims that he reported his absence to another employee, Jeremy Driscoll, because Hage was not present. 10/2/07 Henton Dep. at 97 (Pl. Ex. B). In addition, Plaintiff testified at his deposition that he had notified Hage ahead of time

---

[6]At the time of the Loudermill hearing, Plaintiff had not produced the cell phone records confirming that he called into work on July 5th.

[7]Although Plaintiff's Local Rule 56 Statement denied that he left without permission, he failed to cite any evidence in support of this denial. Thus, as noted in Part I, supra, Defendant's statement is accepted as undisputed.

of this doctor's appointment. Id. at 96-97.

In another incident, on November 4, 2005, the City of New London posted a vacancy for a Tractor Trailer Driver/Transfer Station Operator. Welch Aff. at ¶ 11 (Def. Ex. A). Defendant maintains that this vacancy was posted internally in compliance with the collective bargaining agreement. Id.; Def.'s 56(a)1 Statement ¶ 43. Plaintiff disputes this claim. The closing date for the position was November 14, 2005. Welch Aff. at ¶ 11 (Def. Ex. A). Plaintiff was not working during the time period in which this vacancy was posted. 10/15/07 Henton Dep. at 109-110 (Def. Ex. E). Plaintiff disputes Defendant's claim that he was not qualified for this position. Pl.'s 56(a)(1) Statement ¶ 47. Hage, who is not black, saw this vacancy posting and applied for the position. Hage Aff. at ¶ 9 (Def. Ex. B). Hage was transferred into this position in December 2005. Id.

Plaintiff also claims that the Solid Waste Department trailer was known as the "monkey house", Henton Aff. at ¶ 16, and that only minority and black employees were required to clean the recycling pit of garbage. Henton Aff. at ¶ 10 (Pl. Ex. F).

## C. Discussion

### 1. Title VII and CFEPA

In his complaint, Plaintiff alleges a hostile work environment, discrimination, and retaliation based on his race in

violation of Title VII and CFEPA. Specifically, Plaintiff claims that he was discriminated against on account of his race by being approached about tardiness on September 7, 2005 while a white co-worker was not. He claims that the September 8, 2005 hearing regarding his July 5, 2005 absence and the September 14th discipline for his unauthorized leave on September 1st were retaliatory in light of complaints he made for being approached about tardiness on September 7th. He also argues that Hage advised him to call in sick in order to take July 5th off. Plaintiff claims that Hage treated him in a hostile manner, and that Plaintiff and other black employees were required to perform more arduous work than their Caucasian co-workers. Finally, Plaintiff contends that he was denied the opportunity to apply for the tractor-trailer position, a position that eventually went to Hage.

The Court addresses Plaintiff's claims of hostile work environment, discrimination, and retaliation in turn. Because "CFEPA claims are analyzed in the same manner as Title VII employment discrimination claims," <u>Vasquez v. Claire's Accessories, Inc.</u>, 392 F.Supp.2d 342, 348-49 (D. Conn. 2005), no distinction will be made in considering Plaintiff's federal and state claims.

### a. Hostile Work Environment

"A hostile work environment claim requires a showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal citations omitted). This test has objective and subjective elements – "[a] work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." Id. (internal citations and quotation marks omitted). The plaintiff must also show that such harassment occurred because of his race. See e.g. Oncole v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998 (1998).

"The question of whether a work environment is hostile under Title VII . . . is primarily one of fact." Longshore-Pizer v. Connecticut, 451 F. Supp. 2d 401, 412 (D. Conn. 2006). Accordingly, in deciding a motion for summary judgment, a court "must restrain itself only to deciding 'whether a reasonable factfinder could conclude . . . that the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Id., citing Schiano v. Quality Payroll Systems, Inc., 445 F. 3d 597 (2d Cir. 2006). "'[A]n Article III judge is not a hierophant of social graces,' and there is no defensible justification for the belief

that courts are superior to juries in demarcating the boundary between merely inappropriate conduct and legally abusive racism." Id., citing Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998). The Court must "look at the totality of the circumstances of a hostile work environment claim, considering 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Buchanan v. Hilton Garden Inn Westbury, No. 06cv3085, 2008 WL 858986, at *9 (E.D.N.Y. March 31, 2008), quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367 (1993).

Here, Plaintiff claims the following as evidence that he was subjected to a hostile work environment on account of his race: being sworn at by his supervisor, ordered to perform difficult work that white employees were not required to perform, and receiving disciplinary action following his complaints. Pl. Mem. in Opp'n to Def's Mot. for Summ. J at 19-20 [Doc. No. 32]. He also claims that the trailer where the solid waste employees checked into was referred to as the "monkey house," id., citing Henton Aff. at ¶ 16 (Pl. Ex. F), and that management consistently assigned easier work to the Caucasian employees. Id. at 20. Considering the totality of the circumstances of Plaintiff's hostile work environment claim, the Court concludes that Defendant's motion for summary judgment on

25

this claim must be GRANTED.

First, Plaintiff admits that Hage only used foul language with him on one occasion. 10/15/07 Henton Dep. at 105 (Def. Ex. E). More importantly, Plaintiff has not proffered any evidence that this language was motivated by, or related to, Plaintiff's race. See id. at 104 (Plaintiff testifying that Hage said "I don't give a damn, you're going to get your ass down there, and, you know, clean up behind this pit"). "Title VII is not a 'general civility code'", Bickersaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999), citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998 (1998), and although it "protects employees from improper discriminatory intimidation[,] it does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors." Curtis v. Airborne Freight Corp., 87 F.Supp.2d 234, 250 (S.D.N.Y. 2000). In this case, Hage's comment did not constitute discriminatory behavior, let alone behavior that was sufficiently severe or pervasive to cause a hostile environment. Second, although Plaintiff asserts that he was ordered to perform difficult work that white employees were not ordered to perform, the only evidence he offers in support of this claim is his assertion that, at some point, he was required to clean the pit area. 10/15/07 Henton Dep. at 113 (Def. Ex. E). Third, although Plaintiff asserts that the solid waste trailer is known as the "monkey house", there is no evidence regarding who

used this phrase or how frequently it was used. Fourth, even accepting as true Plaintiff's claim that Defendant required other minority employees to perform more difficult work, Plaintiff has not shown that these actions altered the conditions of his employment. In fact, in considering the subjective element of the hostile work environment claim, the Court notes Plaintiff's own testimony in his deposition, where he stated that "as far as them treating me poorly, they didn't treat me poorly as far as a lot of this goes. I'm only having my complaint for me because I didn't like that they didn't post jobs and let me know about that which is that tractor trailer job. I didn't like how they treated me medically when I messed up my back. Only them two things I have a complaint with the city." 10/2/07 Henton Dep. at 50 (Def. Ex. E). Accepting for the purposes of this motion the truth of Plaintiff's allegations, and viewing them in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact that would support Plaintiff's claim that he was subjected to a hostile work environment.

### **b. Discrimination**

Plaintiff alleges that the conduct of his employer resulted in discrimination against him with respect to the terms, conditions and privileges of his employment. Compl. at ¶9 [Doc. No. 1]. Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to

27

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).

Claims of discrimination are analyzed under the familiar burden shifting test set forth by the Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). First, "[t]he plaintiff bears the initial burden of proving by [a] preponderance of the evidence a *prima facie* case of discrimination." Id. at 802, 93 S.Ct. at 1824. In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093 (1981). Second, if the plaintiff successfully establishes a *prima facie* case, "the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions." McDonnell Douglas Corporation v. Green, supra. Third, "if the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity." Texas Department of Community Affairs v. Burdine, supra, 450 U.S. at 255, 101 S.Ct. at 1094-95. "The plaintiff must then satisfy the burden of persuading the factfinder that the plaintiff was the victim of discrimination either by

directly persuading the court or jury that a discriminatory reason more likely than not motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256, 101 S.Ct. at 1095.

*I. Prima Facie*

Under McDonnell Douglas, a plaintiff establishes a prima facie case of discrimination by showing that (i) he was a member of a protected class; (ii) he was qualified for the job; (iii) he suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001); Hargett v. Nat'l Westminister Bank, 78 F.3d 836, 838 (2d Cir. 1996).

In this case, Plaintiff argues that the following were adverse employment actions: (1) the July 7, 2005 request for a written reprimand for Plaintiff's failure to work on July 5th and indication that any further incident would result in suspension and termination, (2) a September 7, 2005 reprimand for being tardy, (3) a September 8, 2005 order to attend a disciplinary hearing concerning the July 5, 2005 absence, (3) a September 14, 2005 written warning for unauthorized leave on September 1, 2005, (4) a "denial" of a promotion to a higher position because the job posting was allegedly not posted in his department, and (5) being "required to perform more difficult, arduous and dirtier work than

29

Caucasian employees." Pl's Mem. in Opp'n to Def's Mot. for Summ. J. at 11-13 [Doc. No. 32]. The Court first addresses Plaintiff's argument that he suffered discrimination by being reprimanded and assigned to work undesirable jobs, before turning to his claim that he was denied a promotion.

"The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997). In this case, the first element – membership in a protected class – is not disputed. As for the second element, "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." See Slattery v. Swiss Reins. America Corp., 248 F.3d 87, 91-92 (2d Cir. 2001) (stating that "the qualification prong must not, however, be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision."). Here, Defendant claims only (through the affidavits of Plaintiff's supervisors) that Plaintiff was tardy and sometimes absent. See Hage Aff. at ¶ 4 (Def. Ex. B). There is no evidence that Plaintiff was not qualified for the position he was in *at the time*. Thus, Plaintiff has met the second element of the prima facie test.

However, Plaintiff has not met the third element of the prima

facie test. The Second Circuit has described an adverse employment action under the anti-discrimination provision of Title VII as a "materially adverse change in the terms, privileges, duration and conditions of employment." Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002). A materially adverse action can include "termination of employment, a demotion accompanied by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id. While "Title VII does not define adverse employment action solely in terms of job termination or reduced wages and benefits, and . . . less flagrant reprisals by employers may indeed be adverse," Richardson v. New York State Dept. of Correctional Services, 180 F.3d 426, 446 (2d Cir. 1999), "[t]o be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. NYC Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

Plaintiff argues that the "volume and timing" of being approached for tardiness on September 7th, the disciplinary hearing on September 8th, and the September 23rd written reprimand for the July 5th incident "created serious doubt as to his future with the defendant." Pl's. Mem. in Opp'n to Def's. Mot. for Summ. J. at 12. [Doc. No. 32]. However, Plaintiff has not demonstrated that these actions changed the terms or conditions of his employment, nor has

he presented any evidence that would support his claim that these actions put his position in jeopardy.  See, e.g. Stembridge v. City of New York, 88 F.Supp.2d 276, 283 (S.D.N.Y 2000) (noting that "an employment decision need not result in discharge to fall within the Title VII protection", but finding that the plaintiff had not established an adverse employment action where he failed to show that the reprimand had "a cognizable or material impact on the terms or conditions of his employment"); Valentine v. Standard & Poor's, 50 F.Supp.2d 262, 284 (S.D.N.Y. 1999), aff'd, 205 F.3d 1327 (2d Cir. 2000) (finding that "[g]iven that [P]laintiff's negative reviews did not lead to any immediate tangible harm or consequences, they do not constitute adverse actions materially altering the conditions of his employment.").

Plaintiff has also failed to put forth a genuine issue of material fact to support his claim that he "suffered an adverse employment action in being required to perform more difficult, arduous and dirtier work than Caucasian employees." Pl's. Mem. in Opp'n to Def's. Mot. for Summ. J. at 13 [Doc. No. 32].  Although Plaintiff testified that his black co-workers were assigned to collect on the garbage trucks while his white co-workers were assigned to collect on the (less arduous) recycling trucks, he admitted that, as a driver, he was not required to do any of this work.  10/15/07 Henton Dep. at 105 (Def. Ex. E); 10/2/07 Henton Dep. at 78 (Pl. Ex. B).  The only evidence he offers to support his

claim that he was required to perform less desirable work is his statement that, in the past, he was required to clean the pit area. Even if true, this assignment does not rise to the level of a "materially adverse" action.

Additionally, Plaintiff's claim that he was discriminatorily denied a promotion cannot survive summary judgment. Plaintiff did not apply for the position at issue, and admitted that he was not working during the time period that the vacancy would have been posted. "A plaintiff alleging failure to promote ordinarily must show that he or she applied for the specific job or jobs at issue." Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384, 387 (2d Cir. 2000). However, this requirement does not apply in situations where "the plaintiff indicated to the employer an interest in being promoted to a particular class of positions but was unaware of specific available positions because the employer never posted them." Id. Here, Plaintiff maintains that the vacancy was not posted because his union would have told him about it if it were, and states that "management would not post job openings in the solid waste department." Henton Aff. at ¶ 17 (Pl. Ex. F). Even accepting as true Plaintiff's claim that the position was not posted (which Defendant disputes), there is no evidence that Plaintiff indicated to Defendant an interest in the position. Even if he had, Plaintiff has not put forth any evidence suggesting that Defendant's failure to post the vacancy gives rise to an

inference of discrimination. See, e.g. Giannone v. Deutsche Bank Securities, Inc., 392 F. Supp. 2d 576, 590 (S.D.N.Y. 2005) ("failure to post a vacancy does not give rise to an inference of discrimination – it merely relieves the plaintiff of her burden to show that she applied for the position"); Grant v. Morgan Gaur. Trust. Co. of New York, 638 F. Supp. 1528, 1538 (S.D.N.Y. 1986) ("failure to post job notices, even if proven, is insufficient to substantiate a claim of intentional discrimination where there has been no showing of how the absence of posting resulted in discrimination against the plaintiff"). Thus, he fails to state a prima facie case with respect to his claim that he was discriminatorily denied a promotion.

In sum, Plaintiff has not satisfied his prima facie burden with respect to his claim of discrimination under Title VII. Thus, Defendant's motion for summary judgment as to this claim is GRANTED.

### c. Retaliation

Retaliation claims are also analyzed under the McDonnell Douglas burden shifting test. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

*I. Prima Facie*

To establish a prima facie case of retaliation, a plaintiff must prove that (1) he engaged in a protected activity; (2) defendant knew he participated in that activity; (3) he suffered an

adverse employment action; and (4) there is a causal nexus between the protected activity and the adverse employment action. <u>Schiano v. Quality Payroll Sys., Inc.</u>, 445 F.3d 597, 608 (2d Cir. 2006). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d Cir. 2000). In addition to filing formal charges of discrimination, protected activities also include "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers, who have filed formal charges." <u>Sumner v. United States Postal Servs.</u>, 899 F.2d 203, 209 (2d Cir. 1990). While the plaintiff "need not establish that the conduct he opposed was in fact a violation of Title VII . . . he must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." <u>Manoharan v. Columbia University College of Physicians & Surgeons</u>, 842 F.2d 590, 593 (2d Cir. 1988) (internal citations and quotation marks omitted); <u>see</u> <u>also</u> <u>Sumner v. U.S. Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990) (stating that the plaintiff "need not prove the merit of his underlying discrimination complaint").

Here, Plaintiff claims that he engaged in a protected activity by complaining to supervisors Hage and Gambro on September 7, 2005 about being singled out for tardiness while a white co-worker was

not, 10/15/07 Henton Dep. at 95 (Pl. Ex. B), complaining to Hage and Gambro at an employee meeting that only minority employees were required to clean the pit, id. at 100-101 (Pl. Ex. B), and complaining to Welch and Gambro that they were "get[ting] rid of all the minorities" and that he would "do something about that". Id. at 93 (Pl. Ex. B); Pl's. Mem. in Opp'n to Def's. Mot. for Summ. J. at 21 [Doc. No. 32]. A rational fact-finder could certainly find that Plaintiff was engaging in protected activity by protesting to his supervisors what he reasonably believed to be discriminatory treatment from management, and that Defendant was aware of his complaints.

Plaintiff claims that two instances of discipline he received – the Loudermill hearing on September 8th and the September 14th reprimand for unauthorized leave on September 1st – were adverse employment actions taken in retaliation for his complaints. See Compl. ¶ 10(b); Pl's. Mem. in Opp'n. to Def's. Mot. for Summ. J. at 23. [Doc. No. 32]. To demonstrate an adverse employment action under the anti-retaliation provision of Title VII, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405 (2006) (internal citations and quotation marks omitted). "[T]he

anti-retaliation provision [of Title VII], unlike [Title VII's] substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." <u>Burlington Northern</u>, 548 U.S. at 64, 126 S.Ct. at 2412-13. In this case, a reasonable jury could find that these disciplinary actions were materially adverse actions under the anti-retaliation provision of Title VII, even though Plaintiff failed to demonstrate that they constituted adverse employment actions under the anti-discrimination provision of the statute. As several Courts in this Circuit have noted, "any materially adverse action, not only those that affect the terms and conditions of employment, can be a component of a prima facie case of retaliation." <u>Meder v. City of New York</u>, No. 06-CV-504, 2007 WL 2937362, at *11 (E.D.N.Y. Oct. 9, 2007); <u>Kessler v. Westchester County Dep't of Soc. Servs.</u>, 461 F.3d 199, 208 (2d Cir. 2006) (stating that "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment") (internal citation omitted). In this case, a rational fact-finder could find that the discipline Plaintiff received would dissuade a reasonable employee from making a charge of discrimination. <u>See</u>, <u>e.g.</u> <u>Evarts v. S. New England Telephone Co.</u>, No. 00 CIV 1124, 2006 WL 2864716, at *10 (D. Conn. Oct. 2, 2006) (noting that reprimands not actionable as discrimination may be actionable as retaliation).

Finally, Plaintiff asserts, and this Court agrees, that he has shown a causal connection between his protected activity and the adverse actions taken against him. To establish a causal connection, a plaintiff must demonstrate that the adverse employment action "occurred in circumstances from which a reasonable jury could infer retaliatory intent." Parrish v. Sollecito, 258 F. Supp.2d 264, 268 (S.D.N.Y. 2003). This may be demonstrated either "indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991). "A close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action is alone sufficient to establish causation." Parrish v. Sollecito, 258 F. Supp. 2d at 268, citing Cifra v. Gen. Elec. Co., 252 F.3d 205, 27 (2d Cir. 2001). "However, the Supreme Court has determined that if temporal proximity alone is the basis for determining a causal connection, it must be very close." Id., citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508 (2001).

Here, Plaintiff received notice of his Loudermill hearing the day after he made his complaints to his supervisors. Defendant points out that an interdepartmental memo addressing Plaintiff's

July 5th absence and recommending a written reprimand was issued by Gambro on July 7th – immediately after Plaintiff's absence from work and well before he complained about alleged differential treatment. See Def. Ex. D. However, a reasonable jury could infer retaliatory intent from the fact that Plaintiff did not receive notice of this hearing until September 8th – just one day after his complaints. Similarly, accepting as true Plaintiff's allegation that he informed Hage in advance that he would be absent on September 1st for a doctor's appointment, a reasonable jury could also infer retaliatory intent from the fact that a week after making his complaints, Plaintiff was reprimanded for unauthorized leave for this appointment.

In sum, Plaintiff has put forth a prima facie case of retaliation under Title VII.

*II. Legitimate, Nonretaliatory Reason*

Defendant has rebutted the presumption of retaliation by producing evidence of a legitimate, nonretaliatory reason for its actions. Defendant asserts that Plaintiff was reprimanded for failing to report to work on a double pick up day and for leaving work without authorization. Defendant cites to the collective bargaining agreement and the affidavits of Plaintiff's supervisors to demonstrate that Plaintiff's actions violated workplace regulations. At this stage, the Defendant has the burden of producing, "'through the introduction of admissible evidence,'

39

reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747 (1993) <u>quoting</u> <u>Burdine</u>, 450 U.S. at 254-55 and n. 8, 101 S.Ct. at 1094 and n. 8 (emphasis in <u>Hicks</u>). The Defendant's burden at this stage is "one of production, not persuasion; it 'can involve no credibility assessment,'" <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106 (2000), <u>quoting</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 509, 113 S.Ct. 2742 (1993). Defendant has met this burden.

*III. Pretext*

Plaintiff argues that Defendant's proffered explanation is pretextual. Once an employer offers proof of a legitimate, nonretaliatory reason for its actions, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." <u>Jute</u>, 420 F.3d at 173. To demonstrate that an employer's reason is pretextual, a plaintiff may present "additional evidence showing that 'the employer's proffered explanation is unworthy of credence,'... or [rely] on the evidence comprising the prima facie case, without more ...." <u>Chambers v. TRM Copy Centers Corp.</u>, 43 F.3d 29, 38 (2d Cir. 1994), <u>quoting</u> <u>Burdine</u>, 450 U.S. 248, 256, 101 S.Ct. 1989 (1981).

40

Here, Plaintiff argues that Defendant's reason is unworthy of credence because the discipline that he received for his July 5th absence was improper. He claims that his supervisor advised him to use a sick day on July 5th and that he called his shift "at a time when the phones would be manned" to report his absence. Pl. Mem. in Opp'n to Def's Mot. for Summ. J at 16 [Doc. No. 32]. He also maintains that discipline he received for leaving work early on September 14th was improper because he told Hage that he had a medical appointment. Finally, Plaintiff argues that the timing of these disciplinary actions renders Defendant's explanation unworthy of credence.

The Court finds that the facts alleged by Plaintiff raise a genuine issue of material fact with respect to whether Defendant's proffered explanation is pretextual. As noted above, the timing of Defendant's disciplinary actions against Plaintiff, days after he complained of discriminatory treatment, is suspect. Accordingly, Plaintiff's claim of retaliation survives summary judgment.

## 2. Intentional Infliction of Emotional Distress

Intentional infliction of emotional distress, as its name suggests, is a claim sounding in intentional tort. Conn. Gen. Stat. § 52-557n provides that a municipality "shall not be liable for damages to person or property caused by . . . [a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct . . ."

41

Conn. Gen. Stat. § 52-557n (a)(2).  Under Connecticut law, there is no distinction between "intentional" and "wilful" conduct.  <u>See</u>, <u>e.g.</u> <u>Dubay v. Irish</u>, 207 Conn. 518, 533, 542 A.2d 711 (1988) (stating that "[w]ilful misconduct has been defined as intentional conduct").  Thus, Defendant is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.  <u>See</u>, <u>e.g.</u> <u>Bauer v. Waste Management of Conn.</u>, 239 Conn. 515, 527, 686 A.2d 481 (1996) (stating that because "a wilful act is one done intentionally or with reckless disregard of the consequences of one's conduct . . . the [t]own may not be liable under 52-557n (a)(2)(A) for [its employees'] alleged intentional infliction of emotional distress.").

### 3. Negligent Infliction of Emotional Distress

In Connecticut, "a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity."  <u>Williams v. New Haven</u>, 243 Conn. 763, 767 (1998).  Although Plaintiff admits that he failed, in his pleadings, to cite a statue abrogating this immunity, he now relies on C.G.S. § 52-577n.  <u>See</u> <u>e.g.</u> <u>Tice v. Southington Bd. of Educ.</u>, 94 F. Supp. 2d 242, 245-46 (2002) (permitting plaintiff to assert claim of municipal negligence even where pleadings failed to name a statute abrogating immunity and citation of C.G.S. § 52-577n occurred for the first time in plaintiff's answer to defendant's Rule 50 motion).

Even if Plaintiff could rely on this statute, his claim of negligent infliction of emotional distress fails as a matter of law under the Connecticut Supreme Court's decision in <u>Perodeau v. Hartford</u>, 259, 762-63, 792 A.2d 752 (2002). There, the Court held that an "individual municipal employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." 259 Conn. at 762-63, 792 A.2d 752. It is undisputed that Plaintiff was not terminated. Plaintiff argues that <u>Perodeau</u> is not applicable in this case because <u>Perodeau</u> involved liability against an individual employee, not the municipality itself. However, the Connecticut Appellate Court rejected this argument in <u>O'Connor v. Bd. of Educ. of Town of Wethersfield</u>, where it held that "<u>Perodeau</u> applies regardless of whether the defendant is an individual or a government entity." 90 Conn. App. 59, 69, 877 A.2d 860,866 (2005), <u>cert.</u> <u>denied</u>, 275 Conn. 912 (2005).[8]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike [Doc. No. 34] is GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment [Doc. No. 23] is GRANTED IN PART and

---

[8]In <u>O'Connor</u>, the Appellate Court reasoned that "[t]he policy rationale of <u>Perodeau</u> focuses on the importance of preserving stability in the workplace and not on the identity or status of the defendant ." 90 Conn. App. at 59, 877 A.2d at 866. Thus, the Court stated that it "f[ound] no merit in the distinction [plaintiff] urge[d] [it] to adopt." <u>Id</u>.

DENIED IN PART.  Summary judgment is granted as to all claims except for Plaintiff's Title VII and CFEPA retaliation claim. Counsel for the parties are directed to confer and to present to the Court within thirty (30) days of the date of this ruling a proposed scheduling order, setting forth a date for the submission of a joint trial memorandum and a date when this case will be ready for trial.


                            SO ORDERED


                             __/s/ Ellen Bree Burns, SUDJ__


                            ELLEN BREE BURNS
                            SENIOR U.S. DISTRICT JUDGE


    Dated at New Haven, Connecticut this 23rd  day of May 2008.


                              44